# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JOHNATHON BROWNELL,

      Plaintiff,

v.                                                    Civ. No. 11-0979 MV/GBW

EMILY MONTOYA, THERESA MARTINEZ,
MICHAEL DREW, DETENTION OFFICER
HENRY, FORMER SHERIFF RENE RIVERA,
FORMER WARDEN DEREK WILLIAMS,
and THE VALENCIA COUNTY BOARD OF
COMMISSIONERS,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Theresa Martinez, Detention

Officer Henry, Michael Drew,[1] Former Warden Derek Williams, Rene Rivera, and the Valencia

County Board of Commissioners' ("Defendants") Motion for Summary Judgment [Doc. 17].   The

Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed,

finds that the Motion for Summary Judgment is well taken in part and will be granted in part.

## BACKGROUND

I.    Procedural Background

On September 28, 2011, Plaintiff filed a complaint in the Thirteenth Judicial District Court

for the State of New Mexico ("Complaint") asserting pursuant to 42 U.S.C. Section 1983 that

Defendants violated his constitutional rights to be free from unreasonable search and seizure under

---

[1]   Although Defendant Drew had not been served that the time Defendants filed their Motion for
Summary Judgment, prior to the filing of Defendants' Reply in Support of the Motion for
Summary Judgment ("Reply"), Plaintiff served Defendant Drew.   Defendant Drew has joined and
adopted the Motion for Summary Judgment.   *See* Reply at 2 n.1.

the Fourth and Fourteenth Amendments and alleging that Defendants committed the torts of false

arrest, false imprisonment, and battery.   Plaintiff's claims arise out of a traffic stop that occurred

on September 29, 2009.   Defendants removed the case to this Court on November 11, 2011.

On May 2, 2012, Plaintiff filed a Motion for Leave to Amend Complaint ("Motion to

Amend") seeking to add a Section 1983 malicious prosecution claim as well as a state tort claim

for abuse of process.   Plaintiff also sought to amend the Complaint to add additional allegations to

support Counts III, IV, and V of the original Complaint in order to withstand a motion to dismiss

and to update the alleged facts based upon what he had learned since the litigation commenced.

On June 22, 2012, the Court issued an Order of Reference, referring the Motion to Amend to the

Magistrate Judge, and on June 27, 2012, the Magistrate Judge entered an Order granting the

motion.   On July 2, 2012, Plaintiff filed his Amended Complaint for Recovery of Damages

Caused by the Deprivation of Civil Rights and Tortious Conduct ("Amended Complaint").

II.   <u>Factual Background Relevant to Motion for Summary Judgment</u>[2]

On September 29, 2009, Plaintiff and Jorge Marentes were traveling together in a vehicle

on Highway 47 in Valencia County, New Mexico.   Mr. Marentes was driving the vehicle, which

was registered to Plaintiff, and Plaintiff was riding in the passenger seat of the vehicle.

Defendant Montoya, a deputy sheriff employed by the Valencia County Sheriff's Office

("VCSO"), conducted a traffic stop of the vehicle at approximately 11:30 p.m.   In the criminal

complaint, Defendant Montoya attests that she stopped the vehicle because it was traveling 65

miles per hour in a 45 mile-per-hour zone.   The criminal complaint indicates that Mr. Marentes

---

[2]   Except where otherwise noted, the following facts, which are relevant to Defendants' Motion
for Summary Judgment on Counts I, II, and V of the Complaint, are undisputed.   The allegations
in Plaintiff's Complaint, which are relevant to Defendants' motion to dismiss Counts III and IV,
are set forth separately in Sections III and IV, *infra*.

had bloodshot eyes and slurred speech.   Plaintiff disputes that Mr. Marentes displayed any physical signs of intoxication at the time of the traffic stop, pointing to several pieces of evidence. First, the Los Lunas Police Department breathalyzer receipts reflect that Mr. Marentes registered a 0.0 (i.e., negative result) three times between 1:04 a.m. and 1:08 a.m. (approximately one and one-half hours after Defendant Montoya initiated the traffic stop).   Second, the Officer Screening Form filled out at the Valencia County Detention Center ("VCDC") two-and-one-half hours after the traffic stop indicates that Mr. Marentes was alert and oriented and showed no signs of intoxication or drug withdrawal.   Third, in his affidavit, Mr. Marentes attests that at the time of the stop, his speech was not slurred and his eyes were not bloodshot.

Moreover, the parties dispute whether Mr. Marentes informed Defendant Montoya that he had been drinking during the evening prior to his arrest.   In the criminal complaint, Defendant Montoya contends that Mr. Marentes admitted that he had been drinking at a friend's house before driving.   In his affidavit, however, Mr. Marentes states that he told Defendant Montoya that he had not been drinking in the evening and that he only had consumed two drinks in the afternoon, which was more than six hours prior to the time Defendant Montoya conducted her traffic stop. Plaintiff likewise attests in his affidavit[3] that Mr. Marentes informed Defendant Montoya that the only drinks Mr. Marentes had consumed were two drinks during the afternoon.

Mr. Marentes consented to take several field sobriety tests.   In the criminal complaint,

---

[3]   Defendants argue that the Court should disregard Plaintiff's affidavit because it is self-serving and contradicted by record evidence.   *See York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (if opposing parties relay two different stories, one of which is blatantly contradicted by the record, and if no reasonable jury could believe one party's evidence, a court need not adopt that version of the facts).   The Court disagrees with Defendants' assertion that Plaintiff's affidavit directly contradicts the record.   Plaintiff's affidavit is consistent with Mr. Marentes' affidavit as well as the breathalyzer receipts and the Officer Screening Form filled out at the VCDC.   The Court therefore rejects Defendants' argument that it should disregard Plaintiff's affidavit.

Defendant Montoya maintains that Mr. Marentes failed the tests and that he therefore was arrested for driving under the influence.   In his affidavit, however, Mr. Marentes states that he performed all of the tests without difficulty.   Plaintiff likewise attests in his affidavit that he did not see Mr. Marentes stumble or fall off balance during the field sobriety exercises.

After arresting Mr. Marentes, Defendant Montoya questioned Plaintiff.   Defendant Montoya's criminal complaint indicates that Plaintiff informed her that "he had drunk more beer than Mr. Marentes and that is why Mr. Marentes was driving."   Plaintiff denies that he ever admitted that Mr. Marentes had been drinking that evening.   In his affidavit, Plaintiff states that Mr. Marentes informed Defendant Montoya that he "only had two beers earlier that afternoon." Thereafter, Defendant Montoya placed Plaintiff under arrest for conspiracy to commit driving under the influence.

Defendant Montoya transported Plaintiff and Mr. Marentes to the VCSO.   Mr. Marentes consented to submit to a breathalyzer test.   Valencia County Sheriff Deputy Jorge Trujillo drove Mr. Marentes to the Los Lunas Police Department to take the test, because the VCSO's breathalyzer was not working properly.   Deputy Trujillo administered three breathalyzer tests to Mr. Marentes, all of which yielded the negative result for alcohol of 0.0.   In Defendant Montoya's incident narrative, Defendant Montoya contends that Deputy Trujillo informed her that Mr. Marentes admitted to Deputy Trujillo that he had consumed two beers and smoked marijuana. Upon Mr. Marentes' return from the Los Lunas Police Department, Plaintiff and Mr. Marentes were transported to VCDC for booking.   Defendant Martinez was the VCDC booking officer.

In his affidavit, Plaintiff states that a male correctional officer at VCDC gave Plaintiff a jumpsuit and told him to go into a side room and get undressed.   Two correctional officers,

Defendants Henry and Drew, followed Plaintiff into the room and left the door open with Defendant Montoya standing in the doorway.   Defendant Henry "told [Plaintiff] to spread [his] cheeks, then he moved [Plaintiff's] legs apart and told [Plaintiff] to lift [his] scrotum."   The strip search took several minutes to complete, and Defendant Montoya stood in the doorway looking into the room during the entire process.   Mr. Marentes' affidavit confirms that Defendant Montoya stood in the doorway while Plaintiff was in the side room.

Defendants submit the affidavit of Deputy Warden John Harris, in which Harris states that at the time of Plaintiff's arrest and detention, VCDC had in place a policy prohibiting strip searches by personnel of the opposite sex and searches of detainees in the presence of members of the opposite sex.   Warden Harris further attests that VCDC has no records or evidence indicating that Plaintiff was subjected to a strip search in the presence of a member of the opposite sex.

In her incident narrative, Defendant Montoya states that "[w]hile Mr. Montoya was being searched, a Correctional Officer . . . found [a] dollar bill" rolled up and with white powder on it, without specifying whether the dollar bill was found prior to or after the strip search itself.   In his affidavit, however, Plaintiff states that after completing Plaintiff's strip search, Defendant Henry searched the pockets and found the rolled-up dollar bill.

The parties also dispute whether Plaintiff admitted that he used cocaine.   In her incident narrative, Defendant Montoya indicates that she overheard Plaintiff tell a correctional officer, whom Defendant Montoya does not name, that Plaintiff and Mr. Marentes had done a line of cocaine.   In his affidavit, however, Plaintiff states that Defendant Henry asked if Plaintiff had been doing cocaine after Henry found the dollar bill, and that Plaintiff informed Defendant Henry he had not done cocaine and offered to submit to a drug test.   Despite Plaintiff's offer, at no time

was Plaintiff taken for a medical screening or otherwise segregated to determine if he was intoxicated or under the influence of a drug.   In addition, when Plaintiff was released from VCDC and his personal belongings were returned to him, the one dollar bill was amongst his possessions and had not been segregated or marked as potential evidence.

Mr. Marentes was released from VCDC at around 3:00 a.m. on September 30, 2009.   On October 1, 2009, Plaintiff was moved with the other detainees to an outside workout area.   On the evening of October 1, 2009, Plaintiff was assigned to a pod housing unit and placed in a cell with another detainee.   Plaintiff was released from VCDC on October 2 or 3, 2009.

At 9:10 a.m. on October 1, 2009, after Mr. Marentes was released from VCDC but prior to the time Plaintiff was released, Assistant District Attorney David Wertz sent Defendant Montoya by facsimile a letter dated September 30, 2009, explaining that the State of New Mexico was declining to prosecute a driving under the influence case against Mr. Marentes.   Mr. Wertz wrote that "there is no way the State can prosecute a case against drunk driving" given that Mr. Marentes blew a 0.0 on his breathalyzer tests.   Mr. Wertz further indicated that "[r]egarding the charge of conspiracy to drive while intoxicated, . . . [Mr.] Brownell cannot be charged with that crime" because "Section 30-28-2 of the New Mexico Statutes Annotated states that you cannot conspire to commit a misdemeanor."[4]

Mr. Marentes was not prosecuted for driving under the influence.   Plaintiff was not prosecuted for conspiracy to commit the crime of driving under the influence.

---

[4]   Defendants object to the letter of Mr. Wertz on the ground that the letter constitutes inadmissible hearsay evidence.   *See* Reply at 7.   At the summary judgment stage, however, a district court may consider evidence that is not in a form that would be admissible at trial, provided that its content does not contain inadmissible hearsay.   *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005).   Because the content of Mr. Wertz's letter does not contain inadmissible hearsay, the Court declines to exclude the letter.

## STANDARD

I.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."   *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

7

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense.   The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).   It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citation omitted).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).   If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).   If the nonmoving party, however, successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of

demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity.   *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

II.    Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.   *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   Although this standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id*.   Accordingly, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Thus, while a court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a

motion to dismiss.   *Id*. at 1950.

## **DISCUSSION**

I.   <u>Motion for Summary Judgment on Count I:   Fourth and Fourteenth Amendment Claims for Unlawful Detention and Arrest</u>

      In Count I of the Complaint, Plaintiff sues Defendants Montoya and Martinez in their

individual capacities pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's right to be free

from unreasonable seizure under the Fourth Amendment on the ground that they arrested and

detained him without probable cause.[5]   "Section 1983 creates no substantive civil rights, but

rather only a procedural mechanism for enforcing them."   *See Wilson*, 52 F.3d at 1552; *Graham v.*

*Connor*, 490 U.S. 386, 393-94 (1989).   Thus, in determining whether Defendants are entitled to

summary judgment on Count I, the Court's analysis must focus on the alleged violation of the

Fourth Amendment, made applicable to the states through the Fourteenth Amendment.

      The Fourth Amendment provides that the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and

no Warrants shall issue, but upon probable cause."   U.S. Const. Amend. IV.   Under the Fourth

Amendment, while a police officer can stop and briefly detain a person for investigative purposes

if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be

afoot, *see Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000), intrusions that go beyond a brief

---

[5]   In the original complaint, Plaintiff brings Count I against both Defendants Montoya and Martinez, arguing that Defendant Montoya did not have probable cause to arrest and detain Plaintiff and that Defendant Martinez was the booking officer at VCDC and had an affirmative duty only to book people who had been charged with a crime.   Defendants explain, however, that because Plaintiff failed to serve Defendant Montoya by the time Defendants filed their Motion for Summary Judgment, Defendant Montoya was not a party to the litigation or Motion.   Defendants nonetheless move for summary judgment on the question whether Defendant Montoya had probable cause to arrest Plaintiff, presumably because that question is relevant to whether Plaintiff's municipal and supervisory claims premised on his alleged unlawful arrest have merit.

encounter—namely, arrests or *de facto* arrests—must be supported by probable cause, *see United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993).

Defendants argue that they are entitled to summary judgment in their favor on Count I of the Complaint because the crime of conspiracy to commit driving under the influence is a valid crime in New Mexico and because Defendant Montoya had probable cause to arrest Plaintiff for that crime.   Plaintiff disagrees, arguing first that the Court must deny the Motion for Summary Judgment because conspiracy to commit misdemeanor driving while intoxicated is not a crime, and second that, even if it were, a genuine issue of material fact precludes summary judgment on the question whether Defendant Montoya had probable cause to arrest Plaintiff.

      A.    <u>Conspiracy to Commit Misdemeanor Driving Under the Influence is Not a Valid Crime in New Mexico</u>

The parties first dispute whether Defendant Montoya arrested Plaintiff for a valid crime when she charged him with conspiracy to commit misdemeanor driving under the influence. New Mexico Code Annotated Section 66-8-102(C)(1) provides that it shall be unlawful for "a person to drive a vehicle in this state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle." N.M. Stat. Ann. § 66-8-102(C)(1).   Section 66-8-102(D)(1) provides that aggravated driving under the influence of intoxicating liquor or drugs consists of "driving a vehicle in this state with an alcohol concentration of sixteen one hundredths or more in the driver's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle."   *Id.* § 66-8-102(D)(1).   A first conviction for either driving under the influence or aggravated driving under the influence constitutes a petty misdemeanor

under New Mexico law.   *See id.* § 66-8-102(E); N.M. Stat. Ann. §§ 31-1-2(L), 30-1-6(C); *see also*

*State v. Benjamin C.*, 781 P.2d 795, 798 (N.M. Ct. App.) (first conviction for driving under the

influence or aggravated driving under the influence is a petty misdemeanor), *cert. denied*, 781 P.2d

782 (1989).   Only upon a fourth conviction of driving under the influence or aggravated driving

under the influence is a person guilty of committing a felony.   *See* N.M. Stat. Ann. § 66-8-102(G).

Defendants maintain that conspiracy to commit driving under the influence is a valid crime

in New Mexico pursuant to Section 66-8-120 of the New Mexico Code Annotated.   Section

66-8-120 falls within Chapter 66 governing motor vehicles and provides as follows:

> Every person who commits, attempts to commit, conspires to
> commit or aids or abets in the commission of any act declared herein
> to be a crime, . . . shall be guilty of such offense and every person
> who falsely, fraudulently, forcibly or willfully induces, causes,
> coerces, requires, permits or directs another to violate any provision
> of the Motor Vehicle Code or any other law of this state pertaining
> to motor vehicles is likewise guilty of such offense.

N.M. Stat. Ann. § 66-8-120.

In *State v. Marquez*, the New Mexico Court of Appeals held that the plain language of

Section 66-8-120 applies to "'[e]*very person* who commits, attempts to commit, conspires to

commit or aids or abets in the commission of *any act declared herein to be a crime*'" and to "'*any*

*provision* of the Motor Vehicle Code [Section 66–1–1].'"   238 P.3d 880, 883 (N.M. Ct. App.

2009) (quoting N.M. Stat. Ann. § 66-8-120) (emphasis added).   Therefore, the plain language of

Section 66-8-120 applies to the crime of driving under the influence set forth in New Mexico Code

Annotated Section 66-8-102,[6] provided that Plaintiff "conspire[d] to commit" that crime.

---

[6]   When the plain language in a statute is clear and unambiguous, a court must give effect to that
language and refrain from further statutory interpretation.   *See Marquez*, 238 P.3d at 882; *see also
id.* (statutes that define criminal conduct are strictly construed).

Plaintiff argues that he did not "conspire[] to commit" the crime because conspiracy to commit *misdemeanor* driving while intoxicated does not fall within the definition of "conspiracy" set forth in Section 30-28-2(A) of the New Mexico Criminal Code.   *See* N.M. Stat. Ann. § 30-28-2(A).

More specifically, Plaintiff does not dispute the fact that conspiracy to commit *felony* driving under the influence is a crime in New Mexico pursuant to Section 66-8-120.   Plaintiff argues, however, that conspiracy to commit misdemeanor driving under the influence is not a crime.[7]   The Criminal Code defines conspiracy as "knowingly combining with another for the purpose of committing a felony within or without this state."   N.M. Stat. Ann. § 30-28-2(A).   The plain language of this statutory definition clearly provides that the crime of conspiracy exists only when the underlying crime is a felony and not misdemeanor.   The New Mexico Court of Appeals has determined that a court should give effect to the plain language of a statute unless this leads to an absurd or unreasonable result.   *See Marquez*, 238 P.3d at 882 (citation omitted); *supra* note 6.

The Court concludes that reading Section 30-28-2(A), which provides the definition for "conspiracy," in conjunction with Section 66-8-120, which provides that anyone who "conspires to commit . . . a crime," does not produce an absurd result.   *Cf. Marquez*, 238 P.3d at 882. Rather, it appears that the Legislature intended for an officer to first determine whether a crime in question is classified as a conspiracy under Section 30-28-2(A) prior to determining whether that individual has "conspired to commit . . . [that] crime" under Section 66-8-120.

Defendants do not specifically address the definition of conspiracy set forth in Section

---

[7]   Plaintiff contends in his response in opposition to the Motion for Summary Judgment that Mr. Marentes has no prior conviction for driving under the influence, but presents no evidence to support this contention.   Plaintiff, however, does present evidence that the Section 66-8-102 driving while intoxicated charge against Mr. Marentes would have been a misdemeanor—and not a felony—charge.   *See* Resp. to Mot. for Summ. J., Exh. H.

13

30-28-2(A) or explain how the conspiracy charge for misdemeanor driving under the influence is viable in light of Section 30-28-2(A).   Rather, Defendants simply state in conclusory fashion and with no further explanation that the conspiracy to commit driving under the influence charge against Plaintiff is valid.   To the extent Defendants suggest that the New Mexico Legislature's definition of conspiracy from Section 30-28-2(A) of the Criminal Code does not apply to conspiracy to commit a traffic offense pursuant to Section 66-8-120 of the Motor Vehicle Code, the New Mexico Court of Appeals specifically rejected this argument in *State v. Marquez.*

In *Marquez*, the Court of Appeals specifically considered whether the definition of "aid and abet" from the New Mexico Criminal Code applied to aiding and abetting a traffic offense under the Section 66-8-120 of the Motor Vehicle Code.   *See* 238 P.3d at 883.   The defendant in *Marquez* contended that the substantive law on accessory liability as defined in the New Mexico Criminal Code was applicable to the crimes defined in the New Mexico Motor Vehicle Code.   *See id.*   The *Marquez* court agreed with the defendant, recognizing that it is presumed that "'the [L]egislature was aware of existing . . . law [in the Criminal Code] and did not intend to enact a law [*i.e.,* Section 66-8-120 in the Motor Vehicle Code] inconsistent with existing law [the Criminal Code].'"   *Id.* (quoting *State v. Chavez*, 174 P.3d 988 (N.M. 2008)).   The *Marquez* court therefore applied the substantive definitions and interpretations of the accessory provisions in the Criminal Code to Section 66-8-120 in the Motor Vehicle Code.   *See id.* (citation omitted).

The Court concludes that under *Marquez* and the ordinary rules of statutory construction, *see supra* note 6, there is no viable claim in New Mexico for conspiracy to commit misdemeanor driving under the influence.   Defendant Montoya, therefore, could not have had probable cause to arrest Plaintiff for conspiracy to commit that crime.   *Cf. Romero v. Fay*, 45 F.3d 1472, 1476 (10th

14

Cir. 1995) ("'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee *has committed or is committing an offense*.'") (emphasis added) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted).   Accordingly, to the extent that Defendants move for summary judgment in their favor on the ground that conspiracy to commit misdemeanor driving under the influence is valid offense in New Mexico, the Court denies the Motion for Summary Judgment.

      B.     <u>Probable Cause to Arrest Plaintiff for Conspiracy</u>

Having denied Defendants' Motion for Summary Judgment on the question whether conspiracy to commit misdemeanor driving under the influence is a valid crime, the Court next must consider whether Defendants nonetheless are entitled to judgment in their favor on Plaintiff's unlawful arrest and detention claims on the ground that Defendant Montoya had probable cause to arrest Plaintiff for conspiracy to commit felony driving under the influence, which is a valid charge in New Mexico.   *See supra* §I.A.   Plaintiff maintains that the Court must deny the motion because a question of fact exists with respect to whether Defendant Montoya had probable cause to conduct the arrest.

"'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'"   *Romero*, 45 F.3d at 1476 (quoting *Jones*, 854 F.2d at 1210).   Probable cause must exist at the time of the arrest. *See Titus v. Ahlm*, No. 07-2213, 2008 WL 4726233, at *3 (10th Cir. Oct. 28, 2008) (citation omitted).   To determine whether the facts and circumstances within Defendant Montoya's

knowledge at the time of the arrest were sufficient to lead a prudent person to believe that Plaintiff was committing the offense of conspiracy to commit felony driving under the influence, the Court must look to the elements of the crime.   *See Aragon v. City of Albuquerque*, No. 10-2129, 2011 WL 1850700, at *2 (10th Cir. May 17, 2011); *Walker v. McLellan*, No. 94-1494, 1995 WL 238329, at *2 (10th Cir. Apr. 21), *cert. denied*, 516 U.S. 990 (1995).

One of the elements of the crime of conspiracy to commit felony driving under the influence is knowledge.[8]   Although driving under the influence itself is a strict liability crime with no mens rea requirement, *see Marquez*, 238 P.3d at 884; *State v. Harrison*, 846 P.2d 1082, 1087 (N.M. Ct. App. 1992) (citations omitted), *cert. denied*, 845 P.2d 814 (1993), the definition of "conspiracy" set forth in Section 30-28-2(A) contains a knowledge requirement.   Specifically, Section 30-28-2(A) provides that conspiracy consists of "knowingly combining with another for the purpose of committing a felony."   N.M. Stat. Ann. § 30-28-2(A).   Thus, Defendant Marquez was required to have probable cause to suspect that Plaintiff knowingly combined with Mr. Marentes for the purpose of committing felony driving while intoxicated.   *Cf. id.*

Defendants maintain that Defendant Montoya had probable cause to suspect that Plaintiff had committed an offense based upon Plaintiff's statements to Defendant Montoya.   In her criminal complaint, Defendant Montoya states that Plaintiff admitted that "he had drunk more beer than Mr. Marentes and that is why Mr. Marentes was driving."   Mot. for Summ. J., Exh. A. Defendant Montoya also claims that when she approached the vehicle she noticed that Mr.

---

[8]   Another element of the crime of conspiracy to commit felony driving under the influence is that the conviction is the driver's fourth.   *See* N.M. Stat. Ann. § 66-8-102(G).   The Court, however, need not determine whether Defendant Montoya possessed probable cause with respect to every element of the crime.   If the Court concludes that a question of fact exists with respect to the element of knowledge, that factual dispute alone is a sufficient ground for the Court to deny Defendants' Motion for Summary Judgment.

Marentes had bloodshot eyes and slurred speech and that Mr. Marentes failed his field sobriety tests.[9]   *See id.*   In his affidavit, however, Plaintiff states that the "only" alcohol Mr. Marentes consumed was two beers during the afternoon.   *See* Resp. to Mot. for Summ. J., Exh. A, ¶ 14; *see also id.* ¶ 46 ("I tried to tell [Defendant Montoya] that [Mr. Marentes] hadn't been drinking"). Moreover, Plaintiff presented evidence to controvert Defendant Montoya's statements indicating that Mr. Marentes' eyes were not bloodshot and his speech was not slurred at the time of the arrest. *See id.*, Exh. B, ¶ 20.   Furthermore, in his affidavit Plaintiff attests that he watched Mr. Marentes perform the field sobriety tests and that Plaintiff did not see Mr. Marentes stumble or fall off balance during the exercises.   *See id.*, Exh. A, ¶ 21.

On summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."   *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997).   Because Plaintiff presents evidence that he specifically informed Defendant Montoya that the only alcohol Mr. Marentes consumed was during the afternoon (which was at least six hours prior to the arrest), that Mr. Marentes did not display any physical signs of intoxication such as blood shot eyes or slurred speech, and that Mr. Marentes did not stumble or fall during the field sobriety tests, the Court concludes that Plaintiff has raised a factual question with respect to whether a reasonably

---

[9]   The Court notes that Defendant Montoya claims only that Plaintiff admitted that Mr. Marentes had consumed some amount of alcohol.   Defendant Montoya does not claim Plaintiff admitted that he knew Mr. Marentes was intoxicated or that he had consumed alcohol sufficient to exceed the legal limit.   The Court doubts that this admission alone could cause a reasonable officer to believe that a passenger conspired with a driver to commit the crime of felony driving under the influence.   Because Defendants present additional evidence that could support a finding of knowledge (*e.g.*, that Mr. Marentes had bloodshot eyes and slurred speech, and that he failed his field sobriety tests), however, and because Plaintiff does not move for summary judgment in his favor on this or any ground, the Court need not—and therefore does not—decide this question.

prudent officer in Defendant Montoya's position would have concluded that probable cause existed to suspect that Plaintiff knowingly combined with Mr. Marentes for the purpose of committing the crime of felony driving while intoxicated.   *Cf.* N.M. Stat. Ann. §§ 30-28-2(A). 66-8-120, 66-8-102.   Thus, Plaintiff has met his summary judgment burden by showing that there is a genuine issue for the trial on the question of probable cause.   *Cf. Reiss v. Luchetta*, No. 94-1489, 1996 WL 87051, at *4 (10th Cir. Feb. 28, 1996) ("[b]ecause the existence of probable cause depends upon the reasonableness of an officer's conduct under particular circumstances, claims challenging the bases for arrests usually present factual questions" for a jury); *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir.1990) ("[w]e have long recognized that it is a jury question . . . whether an officer had probable cause") (citation omitted), *cert. denied,* 502 U.S. 814 (1991).

Defendants' reliance upon *State v. Marquez*, 238 P.3d 880 (N.M. Ct. App. 2009), in which the court found that a passenger did in fact possess the requisite mens rea to be charged with the crime of aiding and abetting the crime of vehicular homicide and great bodily injury by vehicle, does not persuade the Court to find otherwise.   In *Marquez*, the defendant was a passenger in a vehicle that caused a fatal traffic accident.   *See id.* at 881.   Prior to the accident, the defendant and the driver were refused service in two separate bars because the driver was so intoxicated, the defendant bought a twelve-pack of beer and suggested that the driver should operate a motor vehicle, the driver had a breath alcohol content of .19, and the defendant made statements that he knew the driver was intoxicated at the time of the accident, that he should have taken the driver's keys away, and that he should have avoided the trip.   *See id.* at 882.   The defendant was charged pursuant to New Mexico Statutes Annotated Section 66-8-120 with aiding and abetting the crimes of vehicular homicide and great bodily injury by vehicle.   *See id*. at 881.   The defendant filed a

18

motion to dismiss the charges but thereafter entered a conditional plea, reserving the right to argue

on appeal that the district court should have dismissed the charges against him because his mere

presence as a passenger in the vehicle could not support a charge of being an accessory to the crime

and that he did not have the required mental state to support a conviction.   *See id.*   The New

Mexico Court of Appeals rejected these arguments.   *See id.*

   Specifically, the *Marquez* court looked to the definition of aiding and abetting under the

New Mexico Criminal Code and determined that for the "[d]efendant to be convicted of aiding and

abetting homicide or great bodily harm by vehicle, it would be necessary for the State to

demonstrate that [the d]efendant encouraged and shared the intent of conscious wrongdoing with

[the driver] to the extent that it escalated to a partnership in the enterprise."   *Id.* at 884 (citation

omitted).   The *Marquez* court concluded that the "[d]efendant's presence in the vehicle, his

purchase of additional alcohol, his statements after the accident, his partnership before the

accident, his knowledge of the driver's intoxication, and the driver operating the vehicle following

the defendant's encouragement [were] factors establishing the shared intent of conscious

wrongdoing" sufficient to meet the mens rea required for conviction.   *Id.* at 885.

   Defendants argue that this case is analogous to *Marquez* and that the Court therefore

should conclude that the facts and circumstances surrounding Plaintiff's arrest were sufficient to

lead a reasonably prudent person to conclude that Plaintiff had the necessary mens rea of

knowledge to conspire to commit driving under the influence.   The facts of *Marquez*, however,

are distinguishable from the facts here.   In *Marquez*, the defendant specifically admitted that he

knew the driver was intoxicated at the time of the accident yet nonetheless suggested that the

driver operate a motor vehicle.   *See id.* at 882.   In this case, even on Defendants' version of the

facts, at best Defendants have presented evidence that Plaintiff informed Defendant Montoya that

"he had drunk more beer than Mr. Marentes and that is why Mr. Marentes was driving."   Mot. for

Summ. J., Exh. A, Criminal Compl.   This statement, which implies only that Plaintiff was aware

that Mr. Marentes consumed some amount of alcohol, does not establish that Plaintiff was aware

that Mr. Marentes was intoxicated beyond the legal limit and therefore does not alone show that

Plaintiff "knowingly combin[ed] with [Mr. Marentes] for the purpose of committing" driving

under the influence.   *Cf.* N.M. Stat. Ann. § 30-28-2(A).   Moreover, on summary judgment, the

Court must construe the facts in the light most favorable to Plaintiff, *cf. Kaus*, 985 F. Supp. at

1281, and those facts indicate that Plaintiff never admitted to Defendant Montoya that Mr.

Marentes consumed any alcohol prior to driving on the evening in question, but rather stated that

Mr. Marentes had only two beers in the afternoon, *see* Resp. to Mot. for Summ. J., Exh. A, ¶ 14.

      C.    <u>Qualified Immunity on Count I of the Complaint</u>

In Count I of the Complaint, Plaintiff alleges that Defendant Martinez was the booking

officer at VCDC and that she therefore had an affirmative duty to accept only people who had been

charged with a crime.[10]   Although Plaintiff brings Count I of the Complaint against both

Defendants Montoya and Martinez, Defendants have explained that only the individual capacity

Defendants[11] who have been served—which includes Defendant Martinez but not Defendant

Montoya—move for summary judgment on the ground of qualified immunity.   Thus, the Court

---

[10]   Plaintiff has since amended his complaint and no longer specifically mentions Defendant
Martinez in Count I.   Rather, Plaintiff's only specific allegations against Defendant Martinez fall
within the general "factual background" section of the Amended Complaint.   Plaintiff, however,
has not dismissed Defendant Martinez from this litigation, and Defendant Martinez's Motion for
Summary Judgment is still pending before this Court.   Thus, the Court assumes that Defendants
continue to seek qualified immunity for Defendant Martinez on Count I.
[11]   Qualified immunity protects government officials sued in their individual, but not official,
capacities.   *See Hafer v. Melo*, 502 U.S. 21, 24 (1991).

considers only whether Defendant Martinez is entitled to qualified immunity on Count I.

A plaintiff opposing a motion for summary judgment on the ground of qualified immunity must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The Court will evaluate each part of the qualified immunity test in turn.

### 1.   Constitutional Violation

To determine whether Plaintiff has satisfied the first part of his burden under the modified qualified immunity summary judgment standard by establishing a constitutional violation on the facts as alleged by Plaintiff, the Court must look to the substantive law in effect at the time the conduct in question occurred. *See Saucier*, 533 U.S. at 199. Under substantive Fourth Amendment law, a warrantless arrest is permissible if there is probable cause to believe that the arrestee committed a crime. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

The Court already has concluded that conspiracy to commit misdemeanor driving while intoxicated is not a crime in New Mexico and that Plaintiff has pointed to facts that create a genuine dispute of material fact precluding summary judgment on the question whether Defendant Montoya had probable cause to arrest Plaintiff. *See supra* § I.A. & B. Admittedly, on the evidence before the Court it is unclear whether and to what extent Defendant Martinez as the booking officer at VCDC had access to Defendant Montoya's criminal complaint or the breathalyzer results for Mr. Marentes, and therefore to what extent she was aware, or should have been aware, of the facts supporting a probable cause finding. The qualified immunity inquiry,

however, only requires the Court to determine whether the facts alleged by Plaintiff state a constitutional violation.   Moreover, Defendants do not argue in their Motion for Summary Judgment that Plaintiff failed to allege that Defendant Martinez had knowledge of facts necessary to make a probable cause determination, and the Court therefore does not consider this argument. Thus, the Court concludes that the same facts that were sufficient to create a genuine factual dispute with respect to whether Defendant Montoya had probable cause to arrest Plaintiff likewise satisfy the first part of Plaintiff's qualified immunity burden of stating a constitutional violation by Defendant Martinez on the facts alleged by Plaintiff.   *Cf. Saucier*, 533 U.S. at 199.

The Court is not persuaded that Defendant Martinez has made any compelling arguments requiring the Court to find otherwise.   Defendants set forth only two arguments in support of Defendant Martinez's Motion for Summary Judgment on the ground of qualified immunity.   The first argument is found in a single short paragraph at the end of Defendants' brief in which Defendants make a collective argument that the served individual capacity Defendants are entitled "to qualified immunity for all claims made in the Plaintiff's Complaint," because "[t]he claims made against the individual capacity Defendants do not illustrate a violation of any clearly established right and do not state a viable claim for relief."   Mot. for Summ. J. at 16.   As support for their motion, Defendants maintain only that "all arguments made above are hereby specifically incorporated into this qualified immunity argument."   *Id.*   Defendants assert no specific argument as to whether or why Defendant Martinez in particular is entitled to summary judgment in her favor.   Thus, Defendant Martinez's sole arguments in support of her Motion for Summary Judgment are derivative and based upon Defendants' argument that Defendant Montoya had probable cause to conduct the arrest, which is the only specific substantive argument that

22

Defendants make with respect to Count I.   In evaluating the Motion for Summary Judgment, the Court considers only those arguments Defendants raise in support of their motion.   As described herein, the Court has already concluded that Plaintiff has pointed to facts creating a genuine factual dispute with respect to whether Defendant Montoya had probable cause to arrest Plaintiff. Defendants' first argument in support of Defendant Martinez's Motion for Summary Judgment on the ground of qualified immunity, therefore, does not have merit.

In their reply, Defendants assert a second argument that "the charge [of conspiracy to commit driving under the influence] was a legitimate charge," and therefore, [that] to the extent any served Defendant could have been involved [at the scene], they could not have known that probable cause might not have existed."   Reply at 9.   The Court, however, has already rejected the argument that conspiracy to commit misdemeanor driving while intoxicated is a crime in New Mexico.   Thus, Defendant Martinez's second argument likewise has no merit.

2.   Clearly Established

Because the Court has held that the facts alleged by Plaintiff establish a constitutional violation, the Court must consider next whether Plaintiff has satisfied the second part of the qualified immunity test by demonstrating that the right violated was clearly established.   *See Saucier*, 533 U.S. at 201-02.   "'[T]he right [Defendants are] alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:   The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'"   *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). The Tenth Circuit has held that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point."   *Garramone*, 94 F.3d at 1451.   That is not to

23

say, however, that "the very action in question [must have] previously been held unlawful" for a

plaintiff to defeat qualified immunity, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), but rather

that in light of preexisting law, the unlawfulness was apparent.

Plaintiff has established the second part of his burden by demonstrating that the right to be

free from arrest without probable cause is "clearly established" in the "more particularized sense"

required by Supreme Court precedent.   *Cf. Saucier*, 533 U.S. at 202.   Specifically, as of

September 29, 2009, the date of Plaintiff's arrest, it was well settled in the Tenth Circuit that it is

unlawful to arrest someone without probable cause.   *See Wilkins v. DeReyes*, 528 F.3d 790, 805

(10th Cir. 2008) ("it of course has long been clearly established that knowingly arresting a

defendant without probable cause, leading to the defendant's subsequent confinement and

prosecution, violates the Fourth Amendment proscription against unreasonable searches and

seizures), *cert. denied*, 555 U.S. 1212 (2009); *United States v. Perdue*, 8 F.3d 1455, 1462 (10th

Cir. 1993) (arrests or *de facto arrests* must be supported by probable cause).   Moreover, the Tenth

Circuit has held that detention center officers such as Defendant Martinez are subject to Fourth

Amendment standards during "the period of confinement between arrest without a warrant and the

preliminary hearing at which a determination of probable cause is made."   *Gaylor v. Does*, 105

F.3d 572, 574-75 (10th Cir. 1997).   The Court therefore concludes that the "contours of the right"

to be free from detention without probable cause at a facility like VCDC was "sufficiently clear

that . . . [a] reasonable off[icer]" in the position of Defendant Martinez would have understood that

detaining Plaintiff for a matter that is not a crime or detaining Plaintiff without probable cause

violates that right.   *Cf. Saucier*, 533 U.S. at 202 (citation and internal quotations omitted).   It is a

well-settled and long-standing principle that arrest and detention without probable cause violates

the Fourth Amendment.   *Cf. id.* at 208 (considering as part of its "clearly established" analysis whether the law in question was long standing).   Plaintiff therefore has satisfied both the first and second parts of his burden to overcome an assertion of qualified immunity.

### 3.   Summary Judgment Burden

Because Plaintiff successfully has alleged facts that demonstrate a violation of a clearly established right, Defendant Martinez must assume the normal summary judgment burden of establishing that there is no genuine issue of material fact in dispute that would defeat her claim for qualified immunity.   *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992).   The Court already has determined that conspiracy to commit misdemeanor driving while intoxicated is not a crime in New Mexico and that a genuine dispute of material fact exists with respect to whether Plaintiff's arrest was supported by probable cause.   Thus, the Court denies Defendant Martinez's Motion for Summary Judgment on the ground of qualified immunity.

## II.   Motion for Summary Judgment on Count II:   Fourth and Fourteenth Amendment Claims for Unlawful Strip Search

In Count II of the Complaint, Plaintiff sues Defendants Henry and Drew in their individual capacities pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's Fourth and Fourteenth Amendment rights on the ground that they conducted an allegedly unreasonable and unlawful strip search of Plaintiff.   The Supreme Court has established a rational relationship test for assessing the constitutionality of prison regulations and practices, including strip searches of inmates, in light of the competing concerns for prisoners' constitutional rights under the Fourth Amendment and effective prison administration.   *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995); *Hill v. Bogans*, 735 F.2d 391, 394-95 (10th Cir. 1984).   Specifically, the Court has explained that "'when a prison regulation impinges on

25

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Turner*, 482 U.S. at 89. The Supreme Court has held that in determining whether restrictions are reasonably related to the Government's interest in maintaining security and operating the institution in a manageable fashion, "courts must heed [the] warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979) (internal quotation marks and citation omitted). In balancing the need for the particular search against the invasion of personal rights that the search entails, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. at 559 (citations omitted).

With respect to the first consideration, the scope of the particular search, "'[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude.'" *Id.* (quoting *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993)). Plaintiff also challenges his strip search on the remaining two considerations: the justification for initiating the search, and the manner and place in which the search was conducted. More specifically, Plaintiff first contends that the search was not justified because it was not supported by reasonable suspicion that Plaintiff was hiding drugs or contraband, and next argues that the manner of the search was unreasonable because Defendant Henry searched Plaintiff in front of a member of the opposite sex.

In their Motion for Summary Judgment on Count II, Defendants contend that the Court should grant their motion with respect to the question of the justification for the strip search

because Plaintiff had drug paraphernalia on his person when he was brought into booking giving

rise to reasonable and particularized suspicion for the strip search, and because, even if officers

lacked reasonable suspicion, the Supreme Court's recent decision in *Florence v. Board of Chosen*

*Freeholders* upheld a blanket policy of strip searches without reasonable suspicion for inmates

being admitted to the general population of a detention center, *see* 132 S. Ct. 1510, 1513 (2012).

With respect to the manner in which the strip search was conducted, Defendants contend that the

Court should grant summary judgment in their favor because the VCDC was not directly liable for

Defendant Montoya's conduct, Defendant Montoya is not currently a party to the suit, and the

VCDC had a policy in place that prohibited cross-gender strip searches.   Defendants Henry and

Drew further argue that the Court should grant summary judgment in their favor because they are

entitled to qualified immunity.   The Court will address each of these arguments in turn.

  A. <u>Reasonable Suspicion to Conduct the Strip Search</u>

  Prior to the Supreme Court's decision in *Florence v. Board of Chosen Freeholders*, 132 S.

Ct. 1510 (2012), the controlling precedent in the Tenth Circuit required a strip search of an inmate

placed in the general population to be supported by reasonable suspicion.   *See Archuleta v.*

*Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008).   In *Florence*, however, the Supreme Court upheld

under the Fourth Amendment a blanket policy of strip searching inmates being admitted to the

general population of a detention center regardless of whether there is a reasonable suspicion that

the detainees have contraband or weapons and regardless of the nature of the offense.   *See* 132 S.

Ct. at 1513.   The *Florence* Court declined to address the issue whether there should be an

exception to the rule for detainees who will not be admitted to the general jail population, *see id.* at

1522-23, or for an arrestee whose detention has not been reviewed by a magistrate and who can be

held in available facilities removed from the general population, *see id.* at 1523.   *See infra* § II.B.

Defendants maintain that under the Supreme Court's decision in *Florence*, Defendants Henry and Drew did not need reasonable and particularized suspicion to strip search Plaintiff. Defendants also argue, however, that in the event the Court concludes that an exception to the general rule set forth in *Florence* applies, the strip search nonetheless would be lawful under Tenth Circuit precedent because it was based upon reasonable and particularized suspicion.   *Cf. Archuleta*, 523 F.3d at 1284.   If Defendants are correct, and the undisputed evidence before the Court indicates that the search was based upon reasonable suspicion, the Court need not determine whether an exception to *Florence* applies to the facts of this case.   Thus, the Court first addresses the question whether Defendants Henry and Drew had reasonable and particularized suspicion to strip search Plaintiff.   *See United States v. Freeman*, 691 F.3d 893, 901 n.1 (7th Cir. 2012) (observing that the Supreme Court's decision in *Florence* "may require reconsideration of some aspects of [7th Circuit] case law, but there is no need to do so here [because] the strip search in this case was well-supported by particularized suspicion").

The Tenth Circuit "has articulated two primary concerns in determining whether a strip search is reasonable for the purposes of the Fourth Amendment:   whether a detainee is to be placed in the general prison population and whether there is reasonable suspicion that the detainee has concealed weapons, drugs, or contraband."[12]   *Archuleta*, 523 F.3d at 1284.   "Reasonable suspicion for a search is a minimum level of objective justification based on the totality of the

---

[12]   The parties do not dispute whether Plaintiff was placed in the general population.   *See* Am. Compl. ¶ 183 (conceding that Plaintiff was placed in the general population on October 1, 2009, the day following his strip search).   Thus, the Court focuses its analysis on the second concern articulated by the Tenth Circuit—namely, whether Defendants Henry and Drew had reasonable suspicion to believe that Plaintiff was hiding concealed weapons, drugs, or contraband.   *Cf. Archuleta*, 523 F.3d at 1284.

circumstances, taking into account an officer's reasonable inferences based on training,

experience, and common sense."   *Id.* (internal quotation marks and citation omitted).   "An officer

must, however, 'be able to point to specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant th[e] intrusion.'"   *Stearns v. Clarkson*,

615 F.3d 1278, 1287 (10th Cir. 2010) (quoting *United States v. Davis*, 94 F.3d 1465, 1468 (10th

Cir. 1996)).   The Tenth Circuit has held that possession of drugs provides reasonable suspicion

for a strip search.   *See Warner v. Grand County*, 57 F.3d 962, 964 (10th Cir. 1995).

      In support of their claim that Defendants Henry and Drew had reasonable suspicion to

conduct a strip search, Defendants point to the incident narrative, in which Defendant Montoya

states that "[w]hile [Plaintiff] was being searched, a Correctional Officer . . . found [the] dollar

bill" with a white powder on it.   Mot. for Summ. J., Exh. B., at 3.   Defendant Montoya also

reports that she overheard Plaintiff tell the correctional officer that he and Mr. Marentes had done

a line of cocaine.   In her incident narrative, Defendant Montoya further indicates that Deputy

Trujillo told her that Plaintiff admitted to Trujillo that he had used marijuana.[13]

      While the facts identified by Defendants, if undisputed, might be sufficient to provide a

---

[13]   Plaintiff objects to Deputy Trujillo's statement on the ground of hearsay.   *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005) (at the summary judgment stage, a district court may consider evidence that is not in a form that would be admissible at trial, provided that its content does not contain inadmissible hearsay).   The Court is not persuaded by Defendants' argument that Plaintiff waived his hearsay objection by relying on portions of Defendant Montoya's incident report, because Plaintiff has not specifically relied on any of Deputy Trujillo's statements.   The Court also is not persuaded by the argument that Deputy Trujillo's statement is subject to the party-opponent exception, because Trujillo is not a party to the suit.   The Court further rejects the argument that Deputy Trujillo's statement is admissible under the public records exception, because that exception allows only for the admission of the incident narrative itself, but not the hearsay within the hearsay.   The Court is persuaded, however, by Defendants' argument that Deputy Trujillo's statement falls outside the definition of hearsay to the extent the evidence is not offered to prove the truth of the matter asserted, but rather to show its effect on a hearer such as Defendants Henry and Drew.

corrections officer with reasonable suspicion to conduct the strip search, the Court concludes that they are not sufficient here because Plaintiff has pointed to contrary evidence that creates a genuine issue of material fact sufficient to withstand summary judgment.   Specifically, Defendant Montoya does not specify in her incident narrative whether the officer found the dollar bill before or after the strip search.   Moreover, in his affidavit, Plaintiff attests that it was only after Defendant Henry completed Plaintiff's strip search that Henry searched Plaintiff's pants and found the dollar bill.   Furthermore, in response to Defendant Henry's questioning regarding Plaintiff's use of cocaine, Plaintiff attests that he informed Defendant Henry that he had not done cocaine and offered to submit to a drug test and that Defendants failed to administer any such test.   Plaintiff also indicates that when he was released from VCDC, the one dollar bill was amongst his possessions returned to him and had not been segregated or marked as potential drug evidence.

Moreover, the Court also notes that it is not persuaded that Deputy Trujillo's statement that Mr. Marentes admitted using marijuana serves as evidence in support of a finding of reasonable suspicion by Defendants Henry and Drew.   This piece of evidence of Defendants, when viewed in the light most favorable to Plaintiff, does not suggest that Defendants Henry and Drew reviewed the incident narrative or were otherwise aware of Deputy Trujillo's statements prior to the time they conducted the strip search.   The incident narrative itself includes a description of the events occurring at VCDC, which suggests that Defendant Montoya did not complete the narrative or provide it to VCDC officers prior to the strip search.   The Court therefore assumes that Defendants Henry and Drew were not privy to Deputy Trujillo's statement.[14]   *Cf. Kaus v.*

---

[14]   Even if, however, Defendants had presented evidence that the VCDC officers were aware of Deputy Trujillo's statements prior to the strip search, the Court nonetheless would conclude that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact with respect

*Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997) (in deciding a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence").

For the foregoing reasons, the Court concludes that Plaintiff has satisfied his summary judgment burden "go[ing] beyond the pleadings and . . . designat[ing] 'specific facts showing that there is a genuine issue for trial'" on the question whether Defendants Henry and Drew had reasonable and particularized suspicion to strip search Plaintiff.   *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).   Accordingly, to the extent Defendants seek summary judgment in their favor on the ground that Defendants Henry and Drew had reasonable suspicion to conduct the search, the Court denies the motion.

### B.      Constitutionality of the Search Under *Florence v. Board of Chosen Freeholders*

Having rejected Defendants' argument that the strip search was based upon reasonable and particularized suspicion, the Court must next address the argument that Defendants are entitled to summary judgment on Count II of the Complaint because the Supreme Court in *Florence v. Board of Chosen Freeholders* upheld a jail's blanket policy of strip searching new detainees entering a facility's general population regardless of whether there is a reasonable suspicion that the arrestees have contraband or weapons and regardless of the nature of the offense for which they were arrested.   *See* 132 S. Ct. at 1513.

Plaintiff argues, and the Court agrees, that the *Florence* decision specifically limits its holding to invasive searches on any suspected offender who will be admitted to a facility's general population.   *See id.* at 1522.   An area of uncertainty remains, however, because the *Florence*

to whether Defendants Henry and Drew had reasonable suspicion to strip search Plaintiff.

Court specifically declined to address the issue whether there should be an exception to the general rule enunciated in the case for detainees who will not be admitted to the general jail population or for arrestees whose detention has not yet been reviewed by a magistrate and who can be held in facilities removed from the general population.  *See id.* at 1522-23; *id.* at 1523.

The ambiguity regarding the scope of the *Florence* holding arises from Part IV of the opinion of the Court and the concurring opinions of Chief Justice Roberts and Justice Alito.   In Part IV, the *Florence* Court specifically noted that it was not ruling on whether a strip search "would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees."  *Id.* at 1522-23.   Furthermore, in an oft-quoted statement in Part IV, the Court notes that "[t]he circumstances before the Court . . . do not present the opportunity to consider a narrow exception of the sort Justice Alito describes . . . which might restrict whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subject to the types of searches at issue here."  *Id.* at 1523 (quotations omitted).   Moreover, in his concurring opinion Chief Justice Roberts reflects his reservation about establishing a blanket rule that all arrestees may be strip searched, stating that "it is important . . . that the Court does not foreclose the possibility of an exception to the rule it announces," and that the Court is wise to leave open the possibility of exceptions, to ensure that we not embarrass the future."  *Id.* at 1523 (quotations and citation omitted).   Furthermore, as Part IV acknowledged, Justice Alito further points out in his concurring opinion "that the Court does not hold that it is *always* reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be

32

held in available facilities apart from the general population," and that "[t]he Court does not address whether it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer." *Id.* at 1524-25 (emphasis in original).

Although *Florence* left many questions unanswered, a minimum of five Justices (Justice Alito and the four dissenters) did not endorse a blanket rule that *all* persons may be strip searched after they are arrested.  *See Haas v. Burlington Co.*, No. 08-1102, 2012 WL 5497941, at *3 (D.N.J. Nov. 13, 2012).   In addition, except for Justice Thomas, the Supreme Court appears to be receptive to an exception to a blanket strip search policy that applies to all arrestees.  *See id*. Although the exception to the *Florence* holding has not yet been defined, at a minimum it appears to include a situation where a person was arrested for a "minor" offense, she/he was not admitted to the general population, and there was no reasonable suspicion she/he was carrying contraband. *See id.*; *cf. Rattray v. Woodbury Co.*, Nos. 07-4014, 08-4008, 08-4032, 2012 WL 6114994, *14 (N.D. Iowa Dec 10, 2012) (considering the separate opinions in *Florence* by Justice Kennedy and the concurring justices and concluding that it is clear that the Supreme Court did *not* hold that a strip search of a detainee *never* requires reasonable suspicion) (citations omitted).   Amongst the numerous unsettled questions left unanswered by *Florence* is whether a jail has a duty to create a separate holding area for a person arrested for a minor offense if none already exists.  *See Haas*, 2012 WL 5497941, at *3 n.4.

Plaintiff argues that on the facts here, the Court should decline to apply the general rule articulated by the *Florence* Court and instead conclude that an exception to *Florence* applies.   In considering Plaintiff's argument, the Court finds the case of *Rattray v. Woodbury County*, 2012

33

WL 6114994, instructive.   In *Rattray*, the district court specifically considered whether an exception to *Florence* should apply, but nonetheless declined to create one because the plaintiffs had failed to raise a factual dispute with respect to whether the circumstances necessitated such an exception.   *See id.* at *19, 21.   The plaintiffs in *Rattray* brought suit under Section 1983 alleging that detention center officials violated the Fourth Amendment when they strip searched the plaintiff-arrestees who had not yet been brought before a magistrate judge.   *See id.* at *1, 17.   The *Rattray* court, aware of the Supreme Court's admonition to defer to jail officials unless there is substantial evidence demonstrating their response to the situation is exaggerated, *see id.* at *12, 18, specifically considered whether an exception to *Florence* might apply, but ultimately held that the plaintiffs failed to generate a genuine issue of material fact that strip searching them without reasonable suspicion was an exaggerated response thus placing their searches within an as-of-yet-undefined exception to the blanket rule set forth in *Florence* or that the officials reasonably could have kept the arrestees separately detained and transported prior to their first trip to appear before a magistrate.   *See id.* at *19, 21.

In the case at bar, the Court likewise concludes that Plaintiff has failed to point to any evidence in the record indicating that Defendants reasonably could have kept Plaintiff separately detained and transported while awaiting his first appearance before a magistrate judge instead of placing him in the general population or that strip searching Plaintiff without reasonable suspicion was an otherwise exaggerated response by the VCDC officers.   *Cf. id.*   In his Notice of Supplemental Authority Plaintiff states, "To the extent that Defendants may contend [that an exception to *Florence* does not apply], Plaintiff hereby gives notice that he will seek leave to file a surreply to show that Plaintiff's strip search was not reasonable under existing Tenth Circuit

precedent and *Florence* has not disturbed that precedent in cases such as Plaintiff's."   Pl's Notice

of Supplemental Authority at 2.   A review of the record, however, indicates that Plaintiff has

failed to provide any additional argument or evidence regarding whether an exception to *Florence*

applies.   Although Plaintiff alleges in his Amended Complaint that Defendants Drew and the

VCDC "could have placed Plaintiff in a separate room until he was taken before a magistrate," *see*

Am. Compl. ¶¶ 121, 184, the Amended Complaint is not verified and therefore does not constitute

admissible evidence for purposes of deciding the Motion for Summary Judgment.   Furthermore,

Plaintiff points to no other admissible evidence indicating that a separate room was available or

that the response of the officers and officials at the VCDC was otherwise exaggerated.   *Cf.*

*Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (to withstand a motion for summary judgment, an

opposing party must designate specific facts showing that there is a genuine dispute of material

fact for trial) (citing Fed. R. Civ. P. 56(e)).   Accordingly, having concluded that Plaintiff has not

satisfied his summary judgment burden of establishing that a factual question exists with respect to

whether an exception to *Florence* applies, the Court grants Defendants' Motion for Summary

Judgment on Count II of the Complaint to the extent that Plaintiff alleges that Defendants' strip

search of Plaintiff was not justified.

      C.     <u>Reasonableness of the Manner in Which the Strip Search was Conducted</u>

Although the Court grants summary judgment in Defendants' favor on the question

whether the strip search was justified, Plaintiff argues that the strip search was unconstitutional on

the second ground that Defendants Henry and Drew conducted the search in an unreasonable

manner in front of a member of the opposite sex.   To be sure, the law does not hold that strip

searches in a facility such as VCDC are valid when performed in a demeaning or humiliating

fashion.   Indeed, the Supreme Court specifically observed in *Florence* that an otherwise valid strip search may still violate the Fourth Amendment if conducted in an abusive, intentionally humiliating, or excessively invasive way.   *See* 132 S. Ct. at 1523 (Kennedy, J.); *see also Rattray*, 2012 WL 6114994, *22 ("[c]ertainly, *Florence* does not stand for the proposition that a strip search, even one not requiring reasonable suspicion, is reasonable if it was conducted in a manner that exposed the detainee, while undressed, to the view of officers and arrestees of the opposite sex or [to] intentionally humiliating or abusive comments").

In *Bell v. Wolfish*, the Supreme Court discussed the factors that must be balanced in assessing the reasonableness of prisoner body cavity searches:   "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.   Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."   441 U.S. 520, 559 (1979); *see also Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995); *Hill v. Bogens*, 735 F.2d 391, 394-95 (10th Cir. 1984).   The Supreme Court warned that there is a danger that such searches will be conducted in "an abusive fashion" and that "[s]uch an abuse cannot be condoned."   *Bell*, 441 U.S. at 560.

Plaintiff challenges the reasonableness of the manner in which Defendants Henry and Drew conducted the strip search on the ground that the officers strip searched Plaintiff in the presence of a member of the opposite sex.   The Tenth Circuit has held that "prisoners do retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex."   *Hayes*, 70 F.3d at 1146 (citation omitted); *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982)) (additional citation omitted).   The Tenth Circuit also has

36

determined that a strip search in front of nonessential personnel or members of the public may be an unreasonable violation of the Fourth Amendment.   *See Hayes*, 70 F.3d at 1148 (evidence that a strip search was conducted in front of non-essential personnel created a genuine factual dispute with respect to whether the search was reasonable); *Hill*, 735 F.2d at 394-95 (strip search of a plaintiff in a room in which ten to twelve people were milling about was unreasonable).   The Tenth Circuit, however, has explained that despite this limited privacy right, "prisoners' constitutional rights must be exercised with due regard for the requirements of prison administration."   *Hayes*, 70 F.3d at 1146 (citation omitted).

In *Hayes v. Marriott*, the Tenth Circuit applied the balancing test for evaluating reasonableness of a search articulated by the Supreme Court in *Bell v. Wolfish*, and reversed the district court's grant of summary judgment in the defendants' favor.   *See id.* at 1147, 1148. Specifically, the Tenth Circuit rejected the district court's conclusion that a "single or minimal viewing" of a prisoner by prison officials of the opposite sex is insufficient as a matter of law to constitute a Fourth Amendment violation, holding that "[t]hat conclusion is not supported by [the Tenth Circuit's] prior decisions."   *Id.* at 1147 (citations omitted).   The *Hayes* court noted that the plaintiff had presented evidence that he was subjected to a body cavity search conducted by female staff members and various "nonessential personnel" such as female secretaries and case managers from other buildings.   *See id.*   On these facts, the *Hayes* court could "[]not conclude as a matter of law that [the plaintiff's] Fourth Amendment rights were not violated, simply from the fact that this search occurred only one time."   *Id.*; *see also Cumbey*, 684 F.2d at 714 ("the plaintiff's statement that the male inmates were subject to a 'certain amount of viewing' by female guards does not necessarily fall short of a cognizable constitutional claim").

37

The Tenth Circuit in *Hayes* was not persuaded to uphold the grant of summary judgment in the defendants' favor by any of the facts that the defendants presented, including evidence indicating that the prisoners were searched pursuant to a state policy of conducting thorough searches at all detention facilities on a regular and unscheduled basis, that male staff members were used whenever possible and effort was made to reduce the number of female staff present, that females nonetheless were an essential part of the searches and therefore did view parts of the search, and that the total absence of female staff would have alerted inmates to an impending search. *See id.* In concluding that this evidence was insufficient for the defendants to prevail on their Motion for Summary Judgment, the *Hayes* court determined that "the Fourth Amendment does not require the complete exclusion of members of the opposite sex from areas in which searches are conducted." *Id.* at 1148 (citations omitted). The court explained, however, that the defendants' evidence was not sufficient because the evidence did not explain "which female staff members were allowed to view the search, what their functions were, [and] why these functions were important to either the search itself or to other prison functions." *Id.* The *Hayes* court concluded that "[g]iven the limited information in the record, summary judgment for the defendant[] prison officials [was] not warranted." *Id.* (citation omitted).

In the case at bar, although Defendants submit the affidavit of Deputy Warden Harris stating that the VCDC's policy prohibited strip searches in front of members of the opposite sex and that the VCDC has no records indicating that Plaintiff was subjected to a strip search in the presence of a member of the opposite sex, Plaintiff has pointed to contrary evidence. In his affidavit, Plaintiff attests (1) that Defendants Henry and Drew instructed Plaintiff to enter a side room at VCDC, (2) that the officers left the door to the side room open with Defendant Montoya, a

38

female officer not employed by VCDC, standing in the doorway, (3) that during the strip search, which took several minutes to complete, Defendant Henry told Plaintiff to spread his cheeks, move his legs apart, and lift his scrotum, and (4) that Defendant Montoya stood in the doorway looking into the room during the entire process.   Moreover, Mr. Marentes's affidavit confirms that Defendant Montoya stood in the doorway while Plaintiff was in the side room being searched.

The Court concludes that Plaintiff's evidence is sufficient to create a genuine issue of material fact with respect to whether the strip search was conducted in a reasonable manner.   *Cf. Bell*, 441 U.S. at 559.   Although the Tenth Circuit has held that "the Fourth Amendment does not require the complete exclusion of members of the opposite sex from areas in which searches are conducted," *Hayes*, 70 F.3d at 1148 (citations omitted), on the facts here, as in *Hayes*, Defendants have failed to present evidence indicating why Defendant Montoya, a member of the opposite sex who was not employed by VCDC, was present and observed the strip search.   Viewing the facts in the light most favorable to the nonmovant and allowing the nonmovant the benefit of all reasonable inferences, *cf. Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), the Court assumes that Defendant Montoya was not essential to the strip search process.   The Tenth Circuit in *Hayes* reversed the decision of the district court granting the prison officials' summary judgment motion where a strip search was conducted in front of members of the opposite sex and there was no explanation whether and why the females present were essential to the search.   *See* 70 F.3d at 1148.   For the same reasons, the Court denies Defendants' Motion for Summary Judgment on the reasonableness of the strip search at issue here.   *Cf. Rattray*, 2012 WL 6114994, *25 (holding that the plaintiff created a genuine factual dispute on the question whether the manner in which a strip search was conducted was reasonable where the plaintiff pointed to evidence

supporting her allegations that the door to the room in which she was searched was ajar and that several men sitting in the booking lobby could see inside of the room); *Hill*, 735 F.2d at 394-95 (holding a strip search of a plaintiff detained for a minor traffic offense in a room in which ten to twelve people were milling about was unreasonable); *Skurstenis v. Jones*, 236 F.3d 678, 683 (11th Cir. 2000) (noting that "courts seem virtually unanimous in condemning strip searches conducted by prison personnel of the opposite sex except in the most extreme of circumstances").

The Court is not persuaded to rule otherwise by Defendants' arguments to the contrary. First, Defendants contend that "there is no direct supervisory liability under § 1983 and Defendant Montoya is not currently a party to this suit" because she has not been served. Mot. for Summ. J. at 15-16. To the extent Defendants are claiming that because Defendant Montoya was not employed by the VCDC, Defendants Henry and Drew could not have violated Plaintiff's Fourth Amendment rights by searching Plaintiff in front of Montoya, the Court rejects this argument. Likewise, to the extent Defendants are arguing that because Plaintiff has not served Defendant Montoya, Plaintiff cannot sustain a Fourth Amendment unlawful search claim against Defendants Henry or Drew, the Court likewise is not persuaded. The constitutional standard for the reasonableness of a strip search conducted in front of a member of the opposite sex does not turn on whether the member of the opposite sex is employed by the detention center in which the search was conducted or on whether the witness is a party to the plaintiff's lawsuit. *Cf. Hill*, 735 F.3d at 394-95 (a strip search conducted in front of members of the public is not reasonable).

The Court finds equally unpersuasive Defendants' second argument that "VCDC had a policy in place prohibiting cross-gender strip searches," and that "no claim may be stated for [Defendant Montoya's] alleged observation of the search because it is undisputed that the policy

40

was in place." *Id.* at 16.   Defendants cite no authority, and this Court finds none, indicating that

the existence of a state policy prohibiting opposite-sex strip searches can immunize prison officials

such as Defendants Henry and Drew from liability for violating the Fourth Amendment if the

officials conduct a strip search in an unreasonable manner.

      D.      <u>Qualified Immunity on Count II of the Complaint</u>

Defendants Henry and Drew in their individual capacities move for summary judgment on

the ground of qualified immunity on Plaintiff's claim that the strip search was not justified and on

Plaintiff's claim that Defendants Henry and Drew conducted the strip search in an unreasonable

manner.   The Court already has granted summary judgment in favor of Defendants on Plaintiff's

claim that the strip search was not justified.   *See supra* § II.B.   Thus, Defendants Henry and

Drew's Motion for Summary Judgment on the ground of qualified immunity with respect to this

claim is denied as moot.   The claim that Defendants Henry and Drew conducted the strip search in

an unreasonable manner, however, is still pending, *see supra* § II.C, and the Court therefore must

determine whether Defendants Henry and Drew are entitled to qualified immunity with respect to

this aspect of Plaintiff's claim.

      1.      <u>Constitutional Violation</u>

To determine whether Plaintiff has satisfied the first part of his qualified immunity burden

by establishing a constitutional violation on the facts alleged by Plaintiff, the Court must look to

the substantive law in effect at the time the conduct in question occurred.   *Cf. Saucier v. Katz*, 533

U.S. 194, 199 (2001).   The Court already has set forth the substantive law regarding Fourth

Amendment standard for determining whether Defendants Henry and Drew conducted the strip

search of Plaintiff in an unreasonable manner and held that under this law Plaintiff has pointed to

41

evidence sufficient to raise a genuine issue of material fact.   *See supra* § II.C.   The same facts

that established a genuine dispute of material fact for purposes of the ordinary summary judgment

standard likewise are sufficient to meet Plaintiff's burden of alleging facts that, if true, are

sufficient to state a constitutional violation under the modified summary judgment standard

applicable when a defendant claims a qualified immunity defense.   *Cf. Saucier*, 533 U.S. at

201-02.   For this reason, the Court concludes that Plaintiff has met the first part of his two-part

burden sufficient to withstand Defendants Henry and Drew's Motion for Summary Judgment on

the ground of qualified immunity with respect to Plaintiff's claim that Defendants Henry and Drew

conducted the strip search of Plaintiff in an unreasonable manner.

2.   Clearly Established

The Court next must determine whether Plaintiff has satisfied the second part of his burden

by demonstrating that the constitutional "right was clearly established at the time such that a

reasonable person in the [movant's] position would have known that [the] conduct violated the

right."   *Id.* at 201-02.   The Tenth Circuit has held that "in order for the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point."   *Medina v. City &*

*County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

At the time of Plaintiff's arrest, it was clearly established pursuant to the Tenth Circuit's

holding in *Hayes v. Marriott* that "prisoners do retain a limited constitutional right to bodily

privacy, particularly as to searches viewed or conducted by members of the opposite sex," and that

a routine strip search of an inmate in front of non-essential opposite-sex personnel may be

unreasonable and a violation of the prisoner's Fourth Amendment rights.   70 F.3d at 1146

(citation omitted); *Hill*, 735 F.2d at 394-95 (strip search of a plaintiff in a room in which ten to

42

twelve people were milling about was unreasonable); *see also Cumbey v. Meachum*, 684 F.2d 712,

714 (10th Cir. 1982)) (additional citations omitted).   Thus, at time of Plaintiff's arrest and

detention, the "contours" of an inmate's Fourth Amendment right to be free from an unreasonable

strip search conducted in front of a member of the opposite sex was "sufficiently clear that . . .

reasonable off[icers]" in the position of Defendants Henry and Drew would have "underst[ood]

that what [they were] doing"—*i.e.*, strip searching Plaintiff in front of a non-essential member of

the opposite sex—violates that right.   *Cf. Saucier*, 533 U.S. at 202 (citation and internal

quotations omitted).   Plaintiff therefore has satisfied both the first and second parts of his burden

to overcome Defendants Henry's and Drew's assertion of qualified immunity.

        3.    <u>Summary Judgment Burden</u>

Because Plaintiff successfully has alleged facts that demonstrate a violation of a clearly

established right with respect to Plaintiff's claim that the strip search was conducted in an

unreasonable manner, Defendants Henry and Drew must assume the normal summary judgment

burden of establishing that there is no genuine issue of material fact in dispute that would defeat

their claims for qualified immunity.   *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392,

1396-97 (10th Cir. 1992).   The Court already has determined that a genuine dispute of material

fact exists with respect to whether Defendants Henry and Drew conducted the strip search of

Plaintiff in a reasonable manner.   Thus, the Court denies Defendants Henry and Drew's Motion

for Summary Judgment on the ground of qualified immunity.

III.    <u>Motion to Dismiss Count III:   Fourth and Fourteenth Amendment Claims for Failure to<br>       Hire, Train, and Supervise the VCSO Deputies</u>

In Count III of the Complaint, Plaintiff brings a Section 1983 supervisory claim against

Defendant Rivera in his individual capacity for negligently hiring, training, and supervising

Defendant Montoya in violation of the Fourth and Fourteenth Amendments.   Plaintiff also brings

a Section 1983 supervisory liability claim against Defendant Rivera in his official capacity and a

municipal liability claim against Defendant Valencia County Board of Commissioners ("Valencia

County") on the ground that they engaged in a pattern and practice of failing to train and supervise

VCSO deputies on constitutional standards, deliberately ignored constitutional violations, and/or

failed to enact policies that would ensure that deputies do not conduct unlawful arrests.

To survive a motion to dismiss, a plaintiff who sues an official under Section 1983 for

conduct "arising from his or her superintendent responsibilities" must plausibly plead not only (1)

that the official's subordinates violated the Constitution, but also (2) that the official by virtue of

his own conduct and state of mind violated the Constitution.   *See Dodds v. Richardson*, 614 F.3d

1185, 1198 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).   Because there is

no respondeat superior liability under Section 1983, "[t]o establish a violation of § 1983 by a

supervisor, as with everyone else, then, '[a] plaintiff must establish a deliberate, intentional act' on

the part of the defendant 'to violate [the plaintiff's legal] rights.'"   *Porro v. Barnes*, 624 F.3d

1322, 1327-28 (10th Cir. 2010) (citations omitted).

In support of their motion to dismiss Plaintiff's supervisory claim against Defendant

Rivera, Defendants argue only that the claim must fail because Plaintiff has not alleged facts that

prove that the officer he supervised, Defendant Montoya, violated the Constitution.[15]   *See* Mot.

---

[15]   Although Defendants maintain that they seek dismissal on all of Plaintiff's claims, Defendants
present no argument, evidence, or authority in support of dismissal of Plaintiff's Count III official
capacity claim against Defendant Rivera or municipal liability claim against Valencia County.
The Court therefore assumes that Defendants' basis for dismissal of these claims likewise is
premised upon the argument that Plaintiff cannot establish underlying liability against Defendant
Montoya.   Similarly, because Plaintiff presents no argument or evidence in support of his Count
IV official capacity claim against Defendant Williams or municipal liability claim against

for Summ. J. at 14-15 (arguing that Plaintiff has not alleged facts to show that Defendant Rivera

directly violated Plaintiff's rights because Montoya charged Plaintiff with a valid crime and

arrested him with probable cause, and maintaining that Plaintiff's "remaining allegations

regarding [Montoya's] character are irrelevant and do not sustain a Fourth Amendment Claim

based on negligent supervision"); Reply at 8-9 (arguing that Plaintiff's supervisory claims against

Defendant Rivera stem from his alleged failure to train on "invented charges" and that because the

"charge was legitimate" "there can be no supervisory liability for arresting Plaintiff").

Defendants do not argue, and this Court therefore does not decide, whether Plaintiff has alleged

facts sufficient to establish that Defendant Rivera by virtue of his own conduct and state of mind

violated the Constitution.[16]   *Cf. Dodds*, 614 F.3d at 1198; *Porro*, 624 F.3d at 1327-28.

The Court already has held that Plaintiff has pointed to facts sufficient to withstand

summary judgment on the question whether Defendant Montoya violated the Constitution because

conspiracy to commit misdemeanor driving under the influence is not a valid crime in New

Mexico, and because a factual question exists with respect to whether Defendant Montoya had

probable cause to arrest Plaintiff for conspiracy to commit felony driving under the influence.

*See supra* § I.A & B.   Thus, assuming Plaintiff's complaint contains allegations similar to the

facts Plaintiff presents in opposition to the Motion for Summary Judgment, Defendants' argument

---

Valencia County, *see infra* § IV, the Court likewise assumes that Defendants' motion to dismiss is
derivative and based upon the underlying liability against Defendants Henry and Drew.

[16]   Defendants do add one sentence at the end of the short paragraph in their reply brief addressing
Plaintiff's supervisory claims stating, "Even if there was insufficient probable cause, that would
not be a supervisory claim."   Reply at 9.   One conclusory sentence, however, without further
explanation as to its meaning or any other additional argument or supporting authority, is not
sufficient to establish that Plaintiff's supervisory claim against Defendant Rivera should be
dismissed.   *See* D.N.M.LR-Civ. 7.1(a) ("[a] motion must be in writing and state with particularity
the grounds and the relief sought"); *id.*, Rule 7.4 (a) ("[a] motion, response or reply must cite
authority in support of the legal positions advanced").

that Plaintiff has failed to allege facts sufficient to state a claim that Defendant Montoya violated the Constitution when she detained and arrested Plaintiff likewise must fail.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court concludes that Plaintiff has alleged facts that are sufficient, if true, to state a plausible claim for relief. Specifically, Plaintiff alleges that Defendant Montoya did not have probable cause to arrest Plaintiff because conspiracy to commit misdemeanor driving under the influence is not a crime in New Mexico and the underlying facts do not indicate that Mr. Marentes was intoxicated because his breathalyzer test was 0.0 within one and one-half hours of the time Defendant Montoya conducted the traffic stop. *See* Compl. ¶¶ 25, 44; Am. Compl. ¶¶ 43. Furthermore, Plaintiff alleges that Defendant Montoya "knew or should have known that even if [Mr.] Marentes were found to be inebriated, he would be a first time offender for DWI and such an offense would not constitute a felony under New Mexico law." *Id.* ¶ 106.

As discussed, the crime of driving under the influence requires a driver to have an alcohol concentration of eight one hundredths or more in the person's breath within three hours of driving the vehicle. *See* N.M. Stat. Ann. § 66-8-102(C)(1). Plaintiff's factual allegation that Mr. Marentes blew a 0.0 on his breathalyzer test is sufficient to establish that Defendant Montoya detained and arrested Plaintiff without probable cause, for if Defendant Montoya had no probable cause to believe the driver of the vehicle was committing the crime of driving under the influence, she could not have probable cause to believe that the passenger in the car was committing the crime of conspiracy to commit driving under the influence. *See supra* § I.A & B.

Moreover, "'[p]robable cause exists if facts and circumstances within the arresting

officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee *has committed or is committing an offense*.'" *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (emphasis added) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted). Defendant Montoya, however, did not have probable cause to believe Plaintiff was committing a crime, because, as the Court has held, conspiracy to commit misdemeanor driving under the influence is not a crime in New Mexico.  *See supra* § I.A.   Thus, Plaintiff's allegations are sufficient to state a claim that Defendant Montoya committed a Constitutional violation on this ground as well.   Thus, for the foregoing reasons, the Court concludes that Plaintiff has stated a plausible claim for relief and that Defendants' motion to dismiss the supervisory claims against Defendant Rivera therefore should be denied.

IV.    Motion to Dismiss Count IV:   Fourth and Fourteenth Amendment Claims for Failure to
         Hire, Train, and Supervise VCDC Defendants

Plaintiff brings a Section 1983 supervisory claim in Count IV of the Complaint against Defendant Williams in his individual capacity for negligently hiring, training, and supervising Defendants Drew and Henry, which resulted in Drew and Henry conducting a search that was not justified and that was unreasonable because it was undertaken in front of a non-essential member of the opposite sex.   Plaintiff also brings a Section 1983 supervisory liability claim against Defendant Williams in his official capacity as well as a municipal liability claim against Defendant Valencia County for establishing and tolerating a pattern and practice of deliberately ignoring constitutional violations by VCDC correctional officers.

Defendants argue that Plaintiff's justification- and manner-based claims against Defendant Williams should be dismissed with prejudice because these claims are derivative of Plaintiff's

claims against Defendants Henry and Drew, and there is no underlying liability against Defendants Henry or Drew.[17]   Specifically, Defendants first contend that the Court should dismiss Plaintiff's justification-based supervisory claims because on the facts alleged by Plaintiff the strip search was justified at its inception, both because it was supported by reasonable suspicion and because under the Supreme Court's decision in *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510, 1513 (2012), reasonable suspicion no longer was required.   *See* Mot. for Summ. J. at 16; Reply at 8. Second, Defendants argue that the Court should dismiss Plaintiff's manner-based claims because the VCDC "had a policy against cross-gender strip searches" and the manner in which Defendants Henry and Drew conducted the search therefore was reasonable.   *See* Mot. for Summ. J. at 16.

A.   Justification for the Strip Search

To prevail on their motion to dismiss Plaintiff's justification-based claims in Count IV of the Complaint, Defendants must establish that Plaintiff has failed to state an underlying claim against Defendants Henry and Drew.   In the context of deciding Defendants' Motion for Summary Judgment on these underlying claims against Henry and Drew, the Court rejected Defendants' argument that there was no liability because Defendants Henry and Drew had reasonable and particularized suspicion to believe that Plaintiff was in possession of drugs and/or drug paraphernalia, holding instead that Plaintiff had identified facts sufficient to create a material

---

[17]   As discussed, to withstand a motion to dismiss a Section 1983 supervisory claim, a plaintiff must plausibly plead not only (1) that the official's subordinates violated the Constitution, but also (2) that the official by virtue of his own conduct and state of mind did so as well.   *See Dodds*, 614 F.3d at 1198 (citing *Iqbal*, 129 S. Ct. at 1949).   Defendants' motion to dismiss the claims in Count IV of the Complaint, however, rests only on the argument that Plaintiff has not alleged facts sufficient to state a claim with respect to this first requirement of establishing that Defendants Williams' subordinates violated the Constitution when they strip searched Plaintiff.   *See* Mot. for Summ. J. at 16; Reply at 8-9.   Defendants do not argue that Plaintiff has failed to state a claim with respect to whether Defendant Williams by virtue of his own conduct and state of mind violated the Constitution.   *See id.*; Mot. for Summ. J. at 16.

dispute for trial on this issue.   *See supra* § II.A.   Defendants also argued, however, and the Court

agreed, that even if the search was not supported by reasonable and particularized suspicion, it

nonetheless was lawful under the Supreme Court's decision in *Florence v. Board of Chosen*

*Freeholders*, 132 S. Ct. 1510, 1513 (2012) (upholding strip searches without reasonable or

particularized suspicion for detainees placed in the general population), because Plaintiff had

failed to generate a factual dispute with respect to whether an exception to *Florence* applies.   *See*

*supra* § II.B.   Although Plaintiff alleged in his Amended Complaint that Defendants Drew and the

VCDC "could have placed Plaintiff in a separate room until he was taken before a magistrate"

instead of placing him in the general population, *see* Am. Compl. ¶¶ 121, 184, the Court noted

Plaintiff had not satisfied his summary judgment burden of coming forward with specific evidence

that showed a separate room in fact was available.   *See supra* § II.B.

     This reasoning, however, which was applicable in the context of Defendants' Motion for

Summary Judgment on Plaintiff's claims against Defendants Henry and Drew, is not applicable to

Defendants' motion to dismiss the supervisory and official capacity claims against Defendant

Williams or the municipal liability claim against Valencia County.   In deciding a motion to

dismiss, a plaintiff is not required to come forward with specific evidence.   To the contrary, the

Court must accept as true all well-pled factual allegations in the Complaint, view those allegations

in the light most favorable to the non-moving party, and draw all reasonable inferences in the

non-moving party's favor.   *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert.*

*denied*, 130 S. Ct. 1142 (2010).   Thus, the Court must accept as true Plaintiff's allegations that

"Defendant Drew . . . knew that VCDC had a separate room within the booking area where

Plaintiff could be held until he was taken before a Magistrate," *see* Am. Compl. ¶ 121, and that the

"VCDC could have placed Plaintiff in a separate room until he was taken before a magistrate," *id.* ¶ 184.   The Court must then determine whether these allegations are sufficient to state a plausible claim that an exception to the blanket rule set forth in *Florence* applies.

In *Flonder v. Sheriff of Kankakee County*, the federal district court declined to apply the blanket rule articulated in *Florence* to detainees who had not been brought before a magistrate judge.   *See* No. 12-2115, 2012 WL 4321714, *6 (C.D. Ill. Aug 31, 2012).   In *Flonder*, the sheriff followed jail policies and subjected a plaintiff detained pursuant to a warrantless arrest to a strip search before placing the plaintiff-detainee into the general jail population, and the plaintiff argued that the strip search was unreasonable under the Fourth Amendment because he had not yet appeared before a magistrate judge.   *See id.* at *1.   The district court declined to grant the defendants' motion to dismiss, holding that further factual development was necessary before the court could determine the applicability of *Florence* as a bar to the plaintiff's suit because it was unclear whether there were other available facilities removed from the general population in which a detainee not yet brought before a magistrate could have been held.   *See id.* at *6.   In reaching its decision, the *Flonder* court stated that the following expert from Part IV of the *Florence* opinion was "key":   "'the circumstances before the Court, however, do not present the opportunity to consider a narrow exception . . . which might restrict whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population.'"   *Id.* at 5 (quoting *Florence*, 132 S. Ct. at 1523).

Here, it is clear that on the facts alleged by Plaintiff there was a separate room within the booking area, removed from the general population, where Plaintiff could have been held until he was taken before a Magistrate.   *See* Am. Compl. ¶ 121.   Thus, the Court concludes that Plaintiff

has alleged facts sufficient to state a plausible claim that *Florence* does not serve as an absolute bar to Plaintiff's claims in Count IV of the Complaint.   *Cf. Flonder*, 2012 WL 4321714, at *6; *supra* § II.B.   Accordingly, Defendants' Motion to Dismiss Plaintiff's justification-based claims in Count IV of the Complaint is denied.

   B. <u>Reasonableness of the Manner in Which the Strip Search was Conducted</u>

  The Court already has determined, in the context of deciding Defendants' Motion for Summary Judgment on Plaintiff's underlying claims based upon the justification for the search, that a question of fact exists with respect to whether Defendants Henry and Drew conducted the strip search in a reasonable manner, because the evidence failed to indicate why Defendant Montoya, a member of the opposite sex who was not employed by the VCDC, was present for the search.   *See supra* § II.C.   Thus, assuming Plaintiff's Complaint contains allegations similar to the facts Plaintiff presents in opposition to the Motion for Summary Judgment, Defendants' argument that Plaintiff has failed to allege facts sufficient to state a claim that Defendants Henry and Drew violated the Constitution when they strip searched in front of a non-essential member of the opposite sex likewise must fail.

  The Court concludes that Plaintiff has alleged facts that are sufficient, if true, to state a plausible claim for relief.   Specifically, Plaintiff has alleged that the strip search took place in a room with the door open to public view, *see* Compl. ¶¶ 60, 65; Am. Compl. ¶ 126, and that Defendant Montoya, a member of the opposite sex who was employee of VCSO and not VCDC, was present for the strip search and "watched Plaintiff while he was stripped naked," Compl. ¶¶ 31, 61; Am. Compl. ¶¶ 68, 126.   For purposes of Defendants' motion to dismiss, the Court must accept as true all well-pled factual allegations in the Complaint, view those allegations in the light

51

most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor.   *See Smith*, 561

F.3d at 1097.   Applying these rules, the Court concludes that Defendant Montoya was not

essential to the strip search and that Defendants Henry and Drew nonetheless conducted the strip

search in front of her.   Thus, Plaintiff has stated a plausible claim that Defendants Henry and

Drew violated Plaintiff's Constitutional rights by strip searching him in front of Defendant

Montoya.   *See Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (noting that "prisoners do

retain a limited constitutional right to bodily privacy, particularly as to searches viewed or

conducted by members of the opposite sex," and holding that the plaintiff had alleged evidence

sufficient to withstand summary judgment where he was subjected to a body cavity search

conducted by female staff members and various "nonessential personnel" such as female

secretaries and case managers from other buildings).   Accordingly, the Court denies Defendants'

motion to dismiss Plaintiff's manner-based claims contained in Count IV of the Complaint.

V.      Motion for Summary Judgment on Count V:   State Law Claims for False Arrest, False
        Imprisonment, Battery, and Negligence

        A.      False Arrest and False Imprisonment

        Defendants move for summary judgment on Plaintiff's state law tort claims set forth in

Count V of the Complaint.   In that count, Plaintiff sues Defendants Montoya and Martinez in their

individual capacities pursuant to Section 41-4-12 of the New Mexico Tort Claims Act

("NMTCA") for committing false imprisonment and false arrest.   Because Defendant Montoya

does not join the Motion for Summary Judgment, the Court considers only whether Defendant

Martinez is entitled to summary judgment on these claims.

        The NMTCA generally protects a defendant from tort liability unless the plaintiff can

establish that the defendant has waived immunity under the Act.   *See* N.M. Stat. Ann. § 41-4-4

(granting immunity from tort liability for "any public employee while acting within the scope of duty . . . except as waived by Sections 41-4-5 through 41-4-12").   Section 41-4-12 of the NMTCA specifically waives the immunity of law enforcement officers for suits alleging:

> personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12 .   The statutory definition of a law enforcement officer includes "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense[.]"   *Id.* § 41-4-3(D).   It is settled New Mexico law that a correctional officer such as Defendant Martinez at a detention center in which inmates are primarily "accused of a criminal offense" and awaiting trial (in contrast to inmates convicted of a criminal offense) fall within the definition of law enforcement officers under the Act.   *See Davis v. Bd. of County Comm'rs*, 987 P.2d 1172, 1183 (N.M. Ct. App. 1999) (citations omitted).   Thus, because Section 41-4-12 specifically waives immunity for false arrest and false imprisonment, Defendant Martinez cannot claim immunity from Plaintiff's state law claims.

Defendant Martinez contends that even though she is not immune from liability, she nonetheless is entitled to summary judgment in her favor on Plaintiff's false arrest and false imprisonment claims because conspiracy to drive under the influence is a valid crime in New Mexico and because probable cause to arrest and detain Plaintiff for this crime existed.   This argument is identical to the argument that Defendants make in support of their Motion for Summary Judgment on Plaintiff's Section 1983 unlawful arrest claim.   *See supra* § I.A & B.   The

parties and court apply the same analysis to Plaintiff's state law tort claims for false arrest and false imprisonment as they applied to Plaintiff's Fourth Amendment constitutional unlawful arrest claim, *see id.*, because all three claims share the common element of a lack of probable cause.   *See Banos v. State*, No. 29,795, 2012 WL 868876, at *3 (N.M. Ct. App. Feb. 8, 2012); *see also Santillo v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 10 (N.M. Ct. App.) (describing probable cause as an element in state tort claims for false arrest and false imprisonment), *cert. denied*, 173 P.3d 763 (2007); *Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (affirming grant of summary judgment to detention officers on the plaintiff's false imprisonment state tort claim because the plaintiff could not establish that the officers lacked probable cause to detain him).

The Court already has determined that conspiracy to commit misdemeanor driving under the influence is not a crime in New Mexico and that Plaintiff has met his summary judgment burden of establishing that a genuine factual dispute exists with respect to whether Defendant Montoya had probable cause to arrest Plaintiff for conspiracy to commit felony driving while intoxicated.   *See supra* § I.A & B.   The Court, based upon these conclusions, therefore denied Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 unlawful arrest and detention claim.   *See id.*   Having so held, the Court likewise denies Defendants' Motion for Summary Judgment on Plaintiff's state law false arrest and false imprisonment claims.   The Court's reasoning in support of its denial of Defendants' Motion for Summary Judgment on the Fourth Amendment unlawful arrest claim is equally applicable to, and therefore is adopted by the Court in support of its denial of Defendants' Motion for Summary Judgment on, Plaintiff's state law tort claims for false arrest and imprisonment.   *See id.*

B.   <u>Battery</u>

Plaintiff sues Defendant Henry in his individual capacity pursuant to the waiver of

sovereign immunity set forth in New Mexico Statutes Annotated Section 41-4-12 for committing

battery when he strip searched Plaintiff.   Section 41-4-12 of the NMTCA specifically waives

immunity for law enforcement officers for suits alleging battery.   *See* N.M. Stat. Ann. §41-4-12.

"New Mexico courts have acknowledged that the elements of civil and criminal assault and

battery are essentially identical[; u]nder New Mexico law, . . . one commits battery when "(a) he

acts intending to cause a harmful or offensive contact with the person of the other . . . , and (b) an

offensive contact with the person of the other directly or indirectly results."   *Sisneros v. Fisher*,

685 F. Supp. 2d 1188, 1220-21 (D.N.M. 2010).   A law enforcement officer, however, is

privileged to use necessary force to conduct an arrest or search.   *See, e.g.*, *State v. Ellis*, 186 P.3d

245, 259 (N.M. 2008) (a "police officer[ has a] privilege of using *necessary* force . . . measured

from the perspective of an objectively reasonable officer); *State v. Doe*, 583 P.2d 464, 467 (N.M.

1978) (a law enforcement officer conducting a search pursuant to routine jail procedures prior to

an inmate's confinement is engaged in the lawful discharge of his duties).

Plaintiff's battery claim is premised on Defendant Henry "forcibly moving Plaintiff's legs

apart during the strip search."   Am. Compl. ¶ 19.   Defendants contend that Defendant Henry was

justified in conducting the strip search and that Defendants therefore should be awarded summary

judgment on Plaintiff's battery claim.   Specifically, Defendants argue that reasonable suspicion

no longer is required for a strip search under the Supreme Court's decision in *Florence v. Board of*

*Chosen Freeholders*, 132 S. Ct. 1510 (2012), and that because the strip search serves as the basis

for Plaintiff's battery claim, the battery claim must fail.

The Court already has granted summary judgment in Defendants' favor on Plaintiff's

claim that Defendants Henry and Drew did not have reasonable suspicion to conduct the strip

search, on the ground that reasonable suspicion is not required under the Supreme Court's decision

in *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012).   *See supra* § II.B.   For the

same reason, the Court likewise concludes that given the *Florence* holding Defendant Henry was

engaged in the lawful discharge of his duties in conducting the strip search and therefore was

privileged to conduct the search.   *Cf. Ellis*, 186 P.3d at 259; *Doe*, 583 P.2d at 467.   The Court

therefore grants Defendants' Motion for Summary Judgment on Plaintiff's battery claim.

      C.     <u>Negligence</u>

          1.     <u>Defendant Rivera</u>

Plaintiff sues Defendant Rivera in his individual and official capacities pursuant to Section

41-4-12 for negligently hiring, training, and supervising Defendant Montoya, which negligence,

Plaintiff argues, subsequently resulted in Plaintiff's false arrest and false imprisonment.   The

NMTCA does not waive immunity for law enforcement officers for simple negligence, but rather

only for negligence that causes an enumerated tort or violation of rights for which immunity is

waived in the Act.   *See Lessen v. City of Albuquerque*, 187 P.3d 179, 186 (N.M. Ct. App.) (stating

that Section 41-4-12 immunity "applies when negligence is alleged only if the negligence caused

an enumerated tort or violation of rights") (citation omitted), *cert. denied*, 187 P.3d 677 (N.M.

2008).   Because Plaintiff alleges that Defendant Rivera's negligence caused the enumerated torts

of false arrest and false imprisonment, the waiver of immunity set forth in Section 41-4-12 of the

NMTCA applies to Plaintiff's claim against Defendant Rivera.

Defendants' argue that Plaintiff's claim against Defendant Rivera must be dismissed

because Defendant Montoya did not commit the torts of false arrest or imprisonment.   The Court,

however, already has concluded that Plaintiff has pointed to facts sufficient to withstand summary

judgment on his false arrest and false imprisonment claims.[18]   *See supra* § V.A.   Thus,

Defendants' Motion for Summary Judgment on Plaintiff's state law negligence claim against

Defendant Rivera, which is premised on a lack of Defendant Montoya's underlying liability,

likewise must fail.

2.   <u>Defendants Drew and Williams</u>

Plaintiff also sues Defendant Drew pursuant to Section 41-4-12 for negligence, and

Defendant Williams for negligently hiring, training, and supervising of Defendants Drew and

Henry.   As discussed, the NMTCA only waives immunity for negligence that caused an

enumerated tort for which immunity is waived.   *See Lessen*, 187 P.3d at 186.   Plaintiff contends

that the enumerated tort that was caused by Defendants' negligence is battery.   The Court,

however, has granted Defendants' Motion for Summary Judgment on the underlying battery

claim, *see supra* § V.B, and thus Plaintiff's negligence claims against Defendants Drew and

Williams premised on that battery must likewise fail.   The Court therefore grants Defendants'

Motion for Summary Judgment on the negligence claims against Defendants Drew and Williams.

D.   <u>Respondeat Superior</u>

1.   <u>Defendant Rivera</u>

Plaintiff sues Defendants Rivera in his official capacity and Valencia County for

respondeat superior liability pursuant to Section 41-4-12 based upon Defendants Montoya's and

Martinez's alleged commission of the enumerated torts of false arrest and false imprisonment.

The New Mexico Supreme Court has allowed the application of respondeat superior under the

NMTCA.   *See Silva v. State*, 745 P.2d 380, 385 (N.M. 1987); *Gallegos v. State*, 758 P.2d 299, 301

---

[18]   Although the Court so held in the context of deciding whether Plaintiff's false arrest and
imprisonment claims against Defendant Martinez could survive, the same reasoning also would
apply to a false arrest and imprisonment claim against Defendant Montoya.

(N.M. Ct. App. 1987).   "'To name a particular entity in an action under the Tort Claims Act requires two things:   (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee.'"   *Silva*, 745 P.2d at 385 (quoting *Abalos v. Bernalillo Co. Dist. Attorney's Office*, 734 P.2d 794, 799 (N.M. Ct. App. 1987)).   "'If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action. . . .   If the city or state directly supervises the employee, then the city or state can be named.'"   *Id.* (quoting *Abalos*, 734 P.2d at 799).

The sole argument of Defendants in favor of dismissal of Plaintiff's respondeat superior claims is that Plaintiff's false arrest and imprisonment claims must fail because there was probable cause to arrest and detain Plaintiff.   The Court, however, has rejected this argument and has denied the Motion for Summary Judgment on the false arrest and imprisonment claims.   *See supra* § V.A.   Because the false arrest and imprisonment claims are still viable, so too are the respondeat superior claims based upon false arrest and imprisonment.   Accordingly, the Court denies Defendants' Motion for Summary Judgment on these claims.

2.   Defendants Williams and Valencia County

Plaintiff also sues Defendants Williams in his official capacity and Valencia County for respondeat superior liability based upon Defendant Henry's alleged commission of the enumerated tort of battery.   The Court has granted Defendants' Motion for Summary Judgment on Plaintiff's battery claim brought pursuant to Section 41-4-12.   Thus, Plaintiff's respondeat superior claim premised on the underlying alleged battery likewise must fail.

58

## **CONCLUSION**

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendants' Motion for Summary Judgment [Doc. 17] is GRANTED IN PART AND DENIED IN PART as follows:

(1)     Defendants' Motion for Summary Judgment on Plaintiff's unlawful arrest and detention claim set forth in Count I of the Complaint is DENIED;

(2)     Defendants' Motion for Summary Judgment on Plaintiff's unlawful strip search claim set forth in Count II of the Complaint is

    a.   GRANTED to the extent that Defendants seek judgment in their favor on the question whether the search was justified;

    b.   DENIED to the extent that Defendants seek judgment in their favor on the question whether the manner in which the search was conducted was reasonable;

    c.   DENIED as moot to the extent Defendants Henry and Drew seek summary judgment on the ground of qualified immunity on Plaintiff's claim that the strip search was not justified; and

    d.   DENIED to the extent Defendants Henry and Drew seek summary judgment on the ground of qualified immunity on Plaintiff's claim that the strip search was conducted in an unreasonable manner;

(3)     Defendants' Motion for Summary Judgment on Plaintiff's supervisory liability claims set forth in Count III of the Complaint is DENIED;

(4)     Defendants' Motion for Summary Judgment on Plaintiff's supervisory liability claims set forth in Count IV of the Complaint is DENIED;

(5)     Defendants' Motion for Summary Judgment on Plaintiff's false arrest and false imprisonment claims set forth in Count V of the Complaint is DENIED;

(6)     Defendants' Motion for Summary Judgment on Plaintiff's battery claim set forth in Count V of the Complaint is GRANTED;

(7)     Defendants' Motion for Summary Judgment on Plaintiff's negligence claims set forth in Count V of the Complaint are DENIED to the extent they are brought against Defendant Rivera and GRANTED to the extent they are brought against Defendants Drew and Williams; and

(8)     Defendants' Motion for Summary Judgment on Plaintiff's respondeat superior claims set forth in Count V of the Complaint are DENIED to the extent they are brought against Defendants Rivera and Valencia County for the torts of false arrest and false imprisonment and GRANTED to the extent they are brought against Defendants Williams and Valencia County for the tort of battery.

Dated this 28th day of March, 2013.

_____

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE